**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GEORGE C. NAILS,           )  NO. SACV 12-0439 GW (SS)
                       )
         Plaintiff,    )
                       )  **MEMORANDUM AND ORDER DISMISSING**
       v.            )
                       )  **SECOND AMENDED COMPLAINT WITH**
OFFICER TIMOTHY HAID, et al.,  )
                       )  **LEAVE TO AMEND**
         Defendants.   )
_____)

**I.**

**INTRODUCTION**

On July 15, 2013, George C. Nails ("Plaintiff"), a California state prisoner proceeding <u>pro se</u>, filed a Second Amended Complaint ("SAC") alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. For the reasons stated below, the SAC is dismissed with leave to amend.[1]

---

[1]  Magistrate Judges may dismiss a complaint with leave to amend without approval of the district judge. <u>See</u> <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991).

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee.  28 U.S.C. § 1915A(a).  This Court may dismiss such a complaint, or any portions thereof, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

## II.

### ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

The Second Amended Complaint names as Defendants the City of Fullerton and Officers Timothy Haid, Ryan Acosta, and Robert Barnes of the City of Fullerton Police Department.  The individually-named Defendants are sued in their individual capacity only.  (SAC at 3-4).[2]

Plaintiff alleges that on July 7, 2009, he accompanied a friend with a head injury to St. Jude's Hospital in Fullerton, California. (Id. at 5).  While Plaintiff's friend was being cared for in the emergency room, Plaintiff went to use the hospital restroom.  (Id.). As he was walking, Plaintiff noticed that a nurse was talking to Officer Haid and was pointing at Plaintiff.  (Id.).  Haid knew Plaintiff from a prior incident.  (Id.).  While Plaintiff was standing at the urinal, Haid entered the restroom and said, "[Y]ou know what this is about don't

_____

[2]  The Court will cite to the SAC and its attached exhibits as though they formed a single, consecutively-paginated document.

you Nails," and, without provocation, kneed Plaintiff from behind, causing Plaintiff's legs to buckle. (Id.). Haid then slammed Plaintiff's face into the tile wall above the urinal, causing blood to "gush from the cut above [Plaintiff's] right eye" and blinding him. (Id. at 5-6). Officer Acosta entered the restroom as Haid was beating Plaintiff. (Id. at 6). Haid and Acosta threw Plaintiff to the tile floor, pinned him down by putting their knees into the center of his back, and proceeded to beat him, breaking his collarbone. (Id.). Haid and Acosta handcuffed Plaintiff and took him to the nurse's station, where he was treated for his injuries and arrested.

Officer Barns, who apparently was not directly involved in the beating, attempted to cover up the incident by filing a false report. In his report, Barnes stated that on July 7, 2009, the date of the incident, he assisted other officers who were attempting to restrain Plaintiff, who was bleeding from his head.[3] (Id. at 7). According to Barns's report, "Fullerton Fire showed up, treated, and prepared [Plaintiff] for transport, and then [Plaintiff] was transported to St. Judes Hospital in Fullerton." (Id.). Plaintiff asserts that "[t]his never happened."

Plaintiff contends that his beating was the result of the failure of City of Fullerton adequately to address claims of police brutality against the homeless and disabled. (Id. at 8). According to Plaintiff, it is "common knowledge among the homeless and the disabled that the 'City of Fullerton' are [sic] constantly brutal," a fact of which the

---

[3] Plaintiff does not identify the location where Plaintiff was being restrained according to Barns's report.

3

City is aware.  (Id.).  As an example of such brutality, the SAC
attaches news articles concerning the death of Kelly Thomas, an unarmed
schizophrenic man who was allegedly beaten to death by City of Fullerton
police, which resulted in murder charges being brought against at least
one officer.  (Id. at 21-31).  Plaintiff asserts that over time, "this
lack of [s]afeguard became the moving force for the[] excessive[] use
of force with retaliation."  (Id. at 8).

Plaintiff asserts that Haid and Acosta violated his Eighth
Amendment rights by beating him "sadistically," his Fourth Amendment
rights "by being unreasonable and acting with malicious intent prior to
[his] arrest," and his Fourteenth Amendment rights by denying him equal
protection and due process when they beat him "with excessive force."
(Id. at 5).  Plaintiff contends that Barns and the City of Fullerton
violated his Fourteenth Amendment rights by denying him equal protection
when Barns filed a false police report and the City of Fullerton failed
to address acts of police brutality against the homeless and disabled.
(Id. at 7-8).  Plaintiff seeks compensatory damages in an amount to be
determined and punitive damages in the amount of $1,204,500.00 against
Haid and Acosta each and $602,250.00 against Barns.  (Id. at 9).
Plaintiff also seeks declaratory relief and an injunction ordering the
City of Fullerton "to evaluate and revise [its] policy toward police
brutality."  (Id.).
\\
\\
\\
\\
\\

4

1

**III.**

2

**DISCUSSION**

3

4      Under 28 U.S.C. § 1915A(b), the Court must dismiss Plaintiff's SAC

5   due to defects in pleading.   <u>Pro se</u> litigants in civil rights cases,

6   however, must be given leave to amend their complaints unless it is

7   absolutely clear that the deficiencies cannot be cured by amendment.

8   See <u>Lopez</u>, 203 F.3d at 1128-29.   The Court finds that the SAC adequately

9   states a Fourth Amendment claim for excessive force against Officers

10   Haid and Acosta and the City of Fullerton.   However, Plaintiff's other

11   theories of liability fail to state a claim.   Accordingly, the Court

12   grants Plaintiff leave to amend, as indicated below.

13

14   **A.**   **The SAC Fails To State An Eighth Amendment Cruel And Unusual**

15        **Punishment Claim Against Officers Haid And Acosta**

16

17      Plaintiff alleges that Haid and Acosta violated his rights under

18   the Eighth Amendment when they "beat [him] [s]adistically  for the very

19   purpose of causing harm and completely out of proportion to legitimate

20   law enforcement needs."   (SAC at 5).   A civil rights claim alleging

21   excessive force may arise under either "the Fourth Amendment's

22   prohibition against unreasonable seizures of the person, or the Eighth

23   Amendment's ban on cruel and unusual punishments." <u>Graham v. Conner</u>,

24   490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).   The Court

25   finds that Plaintiff has adequately stated a claim for excessive force

26   against Haid and Acosta under the Fourth Amendment, which applies to

27   claims of unnecessary force "during or before arrest." <u>Coles v. Eagle</u>,

28   704 F.3d 624, 627 (9th Cir. 2012).   Under the Fourth Amendment, force

5

applied by officers during an arrest is excessive if the officers'
actions are objectively unreasonable under the totality of the
circumstances.  See id. at 628; Graham, 490 U.S. at 397.

However, the Eighth Amendment's protections apply "'only after the
State has complied with the constitutional guarantees traditionally
associated with criminal prosecutions.'"  Id. at 393 n.6 (quoting
Ingraham v. Wright, 430 U.S. 651, 671, n.40, 97 S. Ct. 1401, 51 L. Ed.
2d 711 (1977)); see also P.B. v. Koch, 96 F.3d 1298, 1303 n.4 (9th Cir.
1996) ("[A] convicted prisoner is protected from excessive force by the
Eighth Amendment and a citizen being arrested or investigated is
protected from excessive force by the Fourth Amendment.").  Because
Plaintiff had been neither prosecuted nor convicted at the time of the
alleged beating, Plaintiff's excessive force claim arises under the
Fourth Amendment, not the Eighth Amendment.  Accordingly, the SAC must
be dismissed, with leave to amend.

**B.    The SAC Fails To State A Fourteenth Amendment Due Process Claim
        Against Officers Haid And Acosta**

Plaintiff similarly alleges that Haid and Acosta violated his due
process rights under the Fourteenth Amendment "by beating [him] with
excessive force" prior to his arrest. (SAC at 5). However, the Supreme
Court has instructed that:

[A]ll claims that law enforcement officers have used excessive
force -- deadly or not -- in the course of an arrest,
investigatory stop, or other "seizure" of a free citizen

should be analyzed under the Fourth Amendment and its
"reasonableness" standard, rather than under a "substantive
due process" approach.  Because the Fourth Amendment provides
an explicit textual source of constitutional protection
against this sort of physically intrusive governmental
conduct, that Amendment, not the more generalized notion of
"substantive due process," must be the guide for analyzing
these claims.

Graham, 490 U.S. at 395 (emphasis in original).  Plaintiff's excessive
force claim arises under the Fourth Amendment, not under the due process
clause of the Fourteenth Amendment.  Accordingly, the SAC must be
dismissed, with leave to amend.

**C.**    **The SAC Fails To State A Fourteenth Amendment Equal Protection**
         **Claim Against Any Defendant**

     Plaintiff alleges that Haid and Acosta violated his equal
protection rights under the Fourteenth Amendment by beating him and that
Barns violated his equal protection rights by filing a false incident
report.  (SAC at 5-7).  Plaintiff also claims that City of Fullerton
violated his equal protection rights by failing to address claims of
police brutality against the disabled and homeless.  (Id. at 8).
However, because Plaintiff fails to clarify whether he is basing his
equal protection claims based on his membership in an identifiable class
or as a "class of one," and also fails to identify the particular
classes he belongs to, the claims, as currently alleged, fail to state
a claim.

1    "The Equal Protection Clause requires the State to treat all

2  similarly situated people equally." Shakur v. Schriro, 514 F.3d 878,

3  891 (9th Cir. 2008). To state an equal protection claim under section

4  1983, a plaintiff must typically allege that "'defendants acted with an

5  intent or purpose to discriminate against the plaintiff based upon

6  membership in a protected class.'" Furnace v. Sullivan, 705 F.3d 1021,

7  1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194

8  (9th Cir. 1998)); see also Lee v. City of Los Angeles, 250 F.3d 668, 686

9  (9th Cir. 2001) (quoting same), overruled on other grounds in Galbraith

10  v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002). Where

11  the governmental classification does not involve a suspect or protected

12  class or impinge upon a fundamental right, the classification will not

13  "'run afoul of the Equal Protection Clause if there is a rational

14  relationship between disparity of treatment and some legitimate

15  governmental purpose.'" Nurre v. Whitehead, 580 F.3d 1067, 1098 (9th

16  Cir. 2009) (quoting Cent. State Univ. v. Am. Ass'n of Univ. Professors,

17  526 U.S. 124, 127–28, 119 S. Ct. 1162, 143 L. Ed. 2d 227 (1999); see

18  also Hooks v. Clark County School Dist., 229 F.3d 1036, 1041 (9th Cir.

19  2000) ("When neither a fundamental right nor a suspect classification

20  is implicated, a classification 'must be upheld against equal protection

21  challenge if there is any reasonably conceivable state of facts that

22  could provide a rational basis' for it.") (quoting Heller v. Doe, 509

23  U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)). "Because

24  'the disabled do not constitute a suspect class' for equal protection

25  purposes, a governmental policy that purposefully treats the disabled

26  differently from the non-disabled need only be 'rationally related to

27  legitimate legislative goals' to pass constitutional muster." Lee, 250

28  F.3d at 687 (quoting Does 1–5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir.

1    1996)).   Similarly,  the  homeless  are  not  a  suspect  class  and  the

2    rational relationship test applies to claims of discriminatory treatment

3    based  on  that  status  as  well.   See  Sanchez v. City of Fresno, 914 F.

4    Supp. 2d 1079, 1108-09 (E.D. Cal. 2012) (citing cases); Joel v. City of

5    Orlando, 232 F.3d 1353, 1357 (11th Cir. 2000) (same).

6

7        Alternatively,  where  the  claim  is  not  that  the  discriminatory

8    action  is  related  to  membership  in  an  identifiable  group,  a  plaintiff

9    can  establish  an  equal  protection  "class  of  one"  claim  by  alleging  that

10   he  as  an  individual  "has  been  intentionally  treated  differently  from

11   others  similarly  situated  and  that  there  is  no  rational  basis  for  the

12   difference  in  treatment"  in  the  departure  from  some  norm  or  common

13   practice.   See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120

14   S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam).   However,

15   allegations  that  defendants  have  merely  done  some  harmful  act  against

16   the  plaintiff,  without  more,  fail  to  state  an  equal  protection  "class

17   of one" claim.   Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1990);

18   Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012) ("[T]he

19   purpose  of  entertaining  a  'class  of  one'  equal  protection  claim  is  not

20   to  constitutionalize  all  tort  law  .  .  .  .")  (internal  quotation  marks

21   omitted).   As one court explained:

22

23       [If] a plaintiff could satisfy the discrimination requirement

24       simply by alleging that other law-abiding persons were not

25       subject  to  unlawful  treatment,  the  scope  of  class-of-one

26       claims  would  be  distorted  to  include  almost  any  intentional

27       tort  committed  by  a  state  actor.   An  officer  who  arrests

28       someone without probable cause or uses unreasonable force on

9

an arrestee is certainly treating the victim differently than persons who have not been subject to false arrest or excessive force; and, almost by definition, those illegal acts are undertaken without a rational basis in the law.  Class-of-one equal-protection claims must be limited to those in which the plaintiff pleads, with requisite specificity, that similarly situated persons were not subject to the specific conduct of which the plaintiff complains.  Strict enforcement of this requirement ensures that the scope of such claims can be properly controlled and the potential of constitutionalizing all tort law on the basis of equal protection, avoided.

Muczynski v. Lieblick, 769 F. Supp. 2d 1129, 1136-37 (N.D. Ill. 2011); see also Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011) (observing that successful "class of one" equal protection claims "have arisen from unfavorable zoning decisions, withholding of permits, and selective regulatory enforcement") (internal citations omitted).

Here, Plaintiff appears to allege that he is "disabled" as a result of a head trauma he suffered in an 18-wheeler accident on March 19, 1990.  (SAC at 33-34).  However, it is unclear whether Plaintiff is claiming "membership" in a "class" of the mentally disabled, physically disabled, or both, or neither.  Moreover, even though Plaintiff alleges that City of Fullerton violates the equal protection rights of the homeless, Plaintiff does not clearly allege that he was homeless at the time of the incident alleged in the SAC.  Therefore, as a general matter, is it unclear whether Plaintiff's equal protection claims are

predicated on his membership in an identifiable group, and if so, which one(s), or whether they are being brought as a "class of one."

Specifically, Plaintiff claims that Haid and Acosta denied him equal protection "by beating [him] with excessive force." (Id. at 5). If Plaintiff is attempting to allege a class-based equal protection claim, however, he fails to allege that Haid and Acosta beat him because he was disabled, or homeless, or belonged to some other identifiable group. Accordingly, Plaintiff has not alleged facts that show that Haid and Acosta made any classification of him at all other than that Haid knew him as an individual from a prior incident. (Id.). If Plaintiff is attempting to assert a "class-of-one" equal protection claim, he fails to identify with specificity who the "similarly situated" people are in comparison to whom Plaintiff was treated differently without a rational basis. See Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (internal quotation marks and citation omitted); Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) ("Plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently.") (emphasis in original) (internal quotation mark omitted).  As mentioned above, a claim that "other law-abiding persons were not subject to unlawful treatment" does not state a class of one equal protection claim. Muczynski, 769 F. Supp. 2d at 1136-37.

Plaintiff's equal protection claim against Barns for filing a false police report fails for the same reasons.  Plaintiff does not allege that Barns filed the report because of Plaintiff's membership in an identifiable group or that Barns treated him differently than other specifically-identified similarly situated people with no rational basis.

Finally, Plaintiff's equal protection claim against City of Fullerton, liberally construed, appears to allege that the City's failure to investigate claims of police brutality "became the moving force" for the excessive use of force against the disabled and homeless. (Id. at 8).  As noted above, however, it is unclear whether Plaintiff is referring to mentally or physically disabled persons and whether Plaintiff claims that he was homeless at the time of the incident. Plaintiff is advised, should he wish to pursue this claim, that in any amended complaint he should clearly identify the groups he belongs to and must place defendants on notice of the nature of his claims. Accordingly, the SAC must be dismissed, with leave to amend.

**D.   The SAC Fails To Show The Direct Involvement Of Barns In A Civil Rights Violation**

Plaintiff alleges that following the incident, Barns filed a false police report indicating that Plaintiff was injured before he was transported to St. Judes Hospital, where Plaintiff alleges that Haid and Acosta attacked him.  (SAC at 7).  However, Plaintiff does not explain how or why Barns' actions caused him harm.

To state a cause of action against an individual in a section 1983 action, the plaintiff must allege facts showing that the individual "personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur." Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Starr v. Baca, 652 F.3d 1202, 1205-06, (9th Cir. 2011) (plaintiff must establish that defendants had personal involvement in the civil rights violation or that their action or inaction caused the harm suffered). Here, it is unclear why Plaintiff believes that Barns's allegedly false police report violated his civil rights or what injury he suffered as a result of the allegedly false report, as he also asserts that success on his complaint will not undermine any conviction he suffered.

If Plaintiff is attempting to allege that the "cover up" resulted in his continued detention, prosecution, and conviction, Plaintiff is advised that if prevailing on his claim against Barns would undermine the validity of that conviction, any purported claim for filing a false report may be barred by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). As the Court has previously explained, under Heck, a section 1983 complaint must be dismissed if judgment in favor of the plaintiff would undermine the validity of his conviction or sentence, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Id. at 487; see also Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005) (same). Accordingly, the SAC must be dismissed, with leave to amend.

1

2   **E.    <u>The SAC Violates Federal Rule Of Civil Procedure 8</u>**

3

4        Federal Rule of Civil Procedure 8(a)(2) requires that a complaint

5   contain "'a short and plain statement of the claim showing that the

6   pleader is entitled to relief,' in order to 'give the defendant fair

7   notice of what the . . . claim is and the grounds upon which it rests.'"

8   <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167

9   L. Ed. 2d 929 (2007).  Rule 8(e)(1) instructs that "[e]ach averment of

10  a pleading shall be simple, concise, and direct."  A complaint violates

11  Rule 8 if a defendant would have difficulty responding to the complaint.

12  <u>Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d

13  1047, 1059 (9th Cir. 2011).

14

15       The SAC does not comply with the standards of Rule 8.   In

16  particular, the narratives in Exhibit A to the SAC contain redundant,

17  rambling, and unnecessary details about the circumstances surrounding

18  the incident at issue in the SAC that occasionally appear to contradict

19  the version of events set forth in the body of the SAC.  (<u>See, e.g.</u>,

20  SAC, Exh. A, at 12-19).  Similarly, the multiple newspaper articles

21  about the death of Kelly Thomas included in Exhibit B are repetitive and

22  unnecessary to establish the circumstances of Mr. Kelly's death

23  following a beating by certain City of Fullerton police officers.  (<u>Id.</u>,

24  Exh. B, at 21-32).  Finally, it is unclear to the Court why Plaintiff

25  has attached Exhibit C, which is a certification of Plaintiff's

26  participation in the prison's Developmental Disability Program.  (<u>Id.</u>,

27  Exh. C, at 34).  To the extent that the certification is intended to

28  support a request for the appointment of counsel, its inclusion in the

14

SAC is improper, as a pleading should simply contain a short and plain statement of the facts showing an entitlement to relief.  Accordingly, the SAC must be dismissed, with leave to amend.

**IV.**

**CONCLUSION**

For the reasons stated above, the SAC is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Third Amended Complaint.  In any amended complaint, Plaintiff shall cure the defects described above.  The Third Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Third Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any prior version of the complaint. Each page of the Third Amended Complaint, including any exhibits or attachments, must be consecutively numbered.  Furthermore, the Third Amended Complaint may not include new Defendants or claims not reasonably related to the allegations in the Second Amended Complaint.

In any amended complaint, Plaintiff should confine his allegations only to the essential facts supporting each of his claims.  Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, <u>a copy of which is attached</u>**.  In any amended complaint, Plaintiff should identify the nature of each separate

15

legal claim and make clear which specific factual allegations support each of those claims.  Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law or include legal argument.

**Plaintiff is explicitly cautioned that failure to timely file a Third Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).  <u>Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1).  A form Notice of Dismissal is attached for Plaintiff's convenience.</u>**

DATED: September 17, 2013


                                        /S/
                                        _____
                                        SUZANNE H. SEGAL
                                        UNITED STATES MAGISTRATE JUDGE

16